THIRD DISTRICT—OCTOBER, 1911.        609

Prud. Ins. Co. of Am. v. Dugger, 163 Ill. App. 609.

# Prudential Insurance Company of America, Appellee, v. Catherine C. Dugger, Appellee, and John L. Boling, Appellant.

INSURANCE—*what facts rescind assignment of policy.*    To stop payment of a check given in consideration of the assignment of a policy operates to rescind the contract of assignment and precludes the assignee from thereafter asserting title to such policy.

Bill of interpleader. Appeal from the Circuit Court of McLean county; the Hon. C. D. MYERS, Judge, presiding. Heard in this court at the November term, 1910. Affirmed. Opinion filed October 14, 1911.

HART & FLEMING, for appellant.

DE MANGE, GILLESPIE and DE MANGE, for appellee.

MR. PRESIDING JUSTICE PHILBRICK delivered the opinion of the court.

The Prudential Insurance Company of America issued an endowment cumulative dividend policy upon the life of John S. Dugger on the 15th day of May, 1901, for $1,000 payable to the insured if alive twenty years from that date, or if John F. Dugger died in the meantime, Charles Dugger and William L. Dugger were named as beneficiaries. The beneficiary under the policy was afterwards changed to Catherine C. Dugger, the wife of the insured. In the early part of the year 1910 John F. Dugger was taken sick; he died February 1, 1910. While he was in the hospital during the month of January the policy was turned over to one Frank DeValon. At that time there was some question as to whether or not the policy of insurance was then a valid and subsisting contract upon the life of John S. Dugger. DeValon took the policy for the purpose of ascertaining whether a loan could be se-

cured thereon for Dugger, and in pursuance of this Boling was approached for a loan. At the request of Boling, Dugger signed a request to the insurance company for information regarding the value of the policy, but before anything was done to consummate this matter, Dugger died, leaving Catherine C. Dugger his widow and the sole beneficiary under this policy. She was without means to pay the expenses of Dugger's last illness and his funeral expenses, and DeValon, who claimed to be a friend of the family, then undertook the task of ascertaining the value of this policy ostensibly for Mrs. Dugger; for this purpose and for the purpose of finding a person who would advance money thereon if it had any value, the transaction with Boling was continued. Boling made inquiry from several insurance agents in Bloomington as to the value of this policy but claims that he could get no definite information in regard thereto. Boling had been engaged in the purchase of insurance policies and the advancement of money on insurance policies. Boling first offered Mrs. Dugger $50 for the policy. Upon representations to her by Boling that the policy was comparatively of no value, Mrs. Dugger agreed to an assignment thereof to Boling. A contract was finally signed by Mrs. Dugger for the purpose of raising immediate funds for the purpose of settling up the funeral expenses, and Boling gave Mrs. Dugger a check for $200 for the policy, claiming to be acting as her friend in this matter. After this transaction Boling then went to the agent of the Prudential Insurance Company of Bloomington and requested that he be furnished with blank proofs of loss; he was then informed that the company prepared its own proofs of loss and that they would not be furnished to him; he then requested that the proofs of loss be made to show that the policy belonged to him; this the agent refused to do and informed Boling that the proofs of loss should be made out

THIRD DISTRICT—OCTOBER, 1911.          611

Prud. Ins. Co. of Am. v. Dugger, 163 Ill. App. 609.

showing Mrs. Dugger as the sole beneficiary under the policy and that the papers should be executed in that way and they might after that time be assigned by her to Boling. Boling ascertained that the value of this policy was something over $800 against which there existed a lien of some $150.

Because the proofs and vouchers could not be made in the name of Boling he at once stopped payment on the check which he had given to. Mrs. Dugger. The check had been executed in the afternoon after banking hours and by the next morning its payment had been stopped. Mrs. Dugger was about to go to Michigan but after payment of the check had been stopped was persuaded by Boling to remain in Bloomington until the proofs of loss could be made, and the papers returned to her and an assignment made by her to him, and for this he agreed to pay her one dollar per day for the time she so remained. Before this time arrived, Mrs. Dugger also learned the value of this policy and refused to execute the assignment requested by Boling, transferring the proceeds of the policy to him; she offered to return the check and demanded the surrender of the assignment of the policy to her. This was refused by Boling who also refused to release his interest therein except upon the payment of $100 to him; this amount Mrs. Dugger refused to pay.

With the proofs of loss made in the name of Mrs. Dugger and she claiming the proceeds of the policy by reason of being the beneficiary therein and Boling claiming the proceeds by reason of the assignment to him, the Prudential Insurance Company filed its bill of interpleader in the McLean Circuit Court and prayed that Mrs. Dugger and Boling be required to establish which one of them was entitled to the proceeds of the policy. Issue was joined upon this interpleader, the cause referred to the master in chancery who reported that Catherine C. Dugger was entitled to

612     APPELLATE COURTS OF ILLINOIS.

Prud. Ins. Co. of Am. v. Dugger, 163 Ill. App. 609.

the proceeds of the policy, and upon his report to the chancellor, his findings were approved and a decree rendered directing the payment of the money to Mrs. Dugger, from which decree defendant Boling appeals.

The only questions involved in this controversy are whether or not the interpleader was properly filed and whether or not the evidence supports the findings of the master and the decree of the chancellor.

Upon examination of this record we find that upon the death of John F. Dugger, Catherine, his widow, was left without funds with which to pay the funeral expenses and the expenses of his last sickness; that this condition of affairs was known to both DeValon and Boling, appellant herein; that DeValon and Boling deliberately entered into a conspiracy for the purpose of defrauding Mrs. Dugger out of her rights under this policy, and that scheme was only thwarted by the action of the agent of the Prudential Insurance Company in refusing to make the proofs of loss out in the name of Boling as assignee of the policy; that at the time Boling represented that he did not know the value of this policy and that it was of comparatively little value, if any, and before he made his check to Mrs. Dugger for $200, he knew the value of this policy and knew that it then insured the life of John S. Dugger for $880 and that premiums had been paid upon that policy sufficient to carry the policy of that value until the fifteenth day of February, 1908; that the policy was subject to a lien of $79 as a preferred lien and an outstanding indebtedness of $120.22. This information was conveyed to Boling by a letter dated January 21, 1910, by the assistant actuary of this company and was given in response to the inquiry made while Dugger was still living, at Boling's request.

The record also discloses that for the assistance that De Valon rendered to Boling in securing the assignment of this policy he was paid $50.

Even had the assignment been made for a full and valuable consideration and under a valid contract with Mrs. Dugger, Boling rescinded the entire transaction by stopping payment upon the $200 check which he gave Mrs. Dugger and cannot after thus rescinding the contract by his deliberate act insist upon her fulfilling the terms of the agreement. The agreement to pay Mrs. Dugger one dollar per day until the draft for the proceeds of the policy were received and assigned to him was but an attempt to continue and further carry out the fraudulent undertaking by Boling and DeValon to defeat this woman out of her money. That portion of the contract was not binding upon her for this reason.

The findings of the master and the decree rendered by the chancellor are fully justified by the evidence in this record, there being no prejudicial error in either the receiving or rejection of any evidence upon the hearing.

*Affirmed.*